## Ducommun's Appeal.

By the settlement of a joint account by two executors and its confirmation· they become jointly liable; their division of the balance equally between themselves, does not alter the case; and the acceptance from each executor by the legatees of the interest on the half part of the balance in his hands did not sever the joint liability, and render each separately liable only for the one-half of the balance received by him.

APPEAL from the decree of the Orphans' Court of *Philadelphia county*.

Benjamin Caullet died, having first made and published his last will and testament, wherein he bequeathed the interest upon all his property to his wife, Sarah Caullet, during her natural life, and at her death the principal to his son Victor, and the child whereof his wife was then pregnant. Samuel Withington and Henry Ducommun were named as executors, and letters testamentary were duly issued to them, at Philadelphia, on the 24th October, 1834. A codicil was appended to the will, bequeathing the sum of $900 to his wife's child, Mary Ann Barbe, when she should arrive at the age of 21 years.

In December, 1835, the executors filed their first account, resulting in a net balance in favor of the estate, of $8529.18. At the foot of the account was a note subscribed by them in these words:—"*Each of the undersigned executors has one-half of the above amount in his possession.*" At one time this sum was deposited in bank to the joint credit of Withington and Ducommun, as executors, but was drawn out and equally divided between them, for investment under the trusts of the will.

This account was referred to three auditors, before whom the accountants, as also Sarah Caullet, the widow, and Thos. Fletcher, the guardian of the testator's two minor children referred to in his will, appeared; no one of them objected to the division of the fund.

Withington became involved in pecuniary embarrassments, and being desirous of protecting the trust for the moneys due by him, confessed a judgment on the 5th of January, 1844, to Mrs. Caullet, for $397, on account of the arrears of interest due to her by him; it was alleged that she had not applied to him for this security, but was informed of its existence when she called upon him for her interest. He, also, on December 30th, 1843, executed a mortgage upon his real estate for the $4756 held by him to Thomas Fletcher, guardian of Victor and Benjamin Caullet, put it upon record, and gave the recorder's receipt for the instrument to the mortgagee.

In June, 1845, Mrs. Caullet petitioned for a citation to the executors to "file an account of the estate, since the filing of their last previous account." The process was issued, and an account

[Ducommun's Appeal.]

filed, showing a balance due the estate of $9432.06, and present-
ing at its foot this memorandum :—

" This amount is equally divided between the two executors, and
each of them holds and is accountable for one-half the above es-
tate, viz.: $4716.03, &c., paying individually interest thereof to
the widow."

Each of the executors had paid interest to the widow, upon his
half, Ducommun paying in full, but Withington being in arrears;
and the widow gave receipts to each as he paid it.

In 1845, Miss Barbe became of age, and Ducommun paid her
the legacy of $900, and also expended a sum of about $55 in
relation to the filing of the accounts. For these sums he claimed
to have credit as against the moneys in his hands.

The accounts were referred to an auditor, to whose report both
parties filed exceptions. The court remitted the account to the
auditor, with directions to restate the account, and to charge the
executors with the principal and interest of the residuary fund, as
if the same were then in their hands and held to be applied to the
trusts under the will.

The auditor, under the directions of the court, reported that the
" Executors of B. Caullet were jointly chargeable, *ex negligentia*,
with all the assets of the estate which came into their hands,"
and that the entire amount of assets, together with the arrears of
interest, was due by them jointly; thus making Ducommun liable
to Mrs. Caullet for the arrears of interest due her by Withington,
after near ten years' payment by him alone, and making Ducommun
liable to the guardian of the minors for the moneys which had
been held by Withington with his knowledge; and he refused
credit to Ducommun for the amount paid Miss Barbe.

Ducommun appealed, and the material exceptions were that the
court below erroneously decreed :—

1. That Ducommun was liable to the widow for the arrears of
interest which she had suffered to become due by Withington.

2. Ducommun is with Withington jointly chargeable, *ex negli-
gentia*, with all the assets of the estate.

3. Ducommon was, under the evidence, liable for more than
one-half of the principal and interest thereupon.

4. Ducommun was not entitled, as against the $4716 in his
hands, to credit for the $900 paid Miss Barbe, and the sum
expended in costs.

The case was argued by *Guillou*, for the appellant.—One execu-
tor was not liable for the money received by the other executor
who afterwards became insolvent: 1 *Dallas* 311, Brown's Appeal;
4 *Rawle* 154, McNair's Appeal.

The two executors were *trustees*, after the confirmation of the

z 2

[Ducommun's Appeal.]

account in 1835. The law deals liberally with trustees. Ducommun was not, therefore, liable for the money received by Withington : 8 *W. & Ser.* 148–9, Jones's Appeal.

If the division or investment was not entirely regular, yet it was ratified by the widow, who made no objection to it at the audit in 1835, or for ten years thereafter, but received the interest due her on each half from the executors separately ; viz., from Ducommun till 22d July, 1845, and from Withington till 28th January, 1842. From January, 1842, till July, 1845, she made no claim on Ducommun for the arrears due by Withington. She did not disclaim any right to the judgment confessed in her favor by Withington for the arrears of interest due by him : 1 *Miles* 245 ; 11 *Ves.* 326 ; 12 *Id.* 355 ; 5 *Id.* 681 ; 2 *Story's Eq.* sec. 1284 ; 1 *Russ. & Myl.* 539 ; 1 *Ball & B.* 353. As to estoppel : 10 *Barr* 530–1 : 1 *Rawle* 171. The auditor was appointed to audit, not to make distribution.

*Pierce,* for appellees.—The memoranda formed no part of the first and third accounts. To the second cash account there was no such memorandum.

The evidence was, all the money of the estate was at one time in bank, and that the two executors drew it out and divided it between themselves. This was not an investment. When one executor has money in his hands and pays it over to his co-executor, or when he actively assists to put it into the hands of the other, he is generally liable : Sterret's Appeal, 2 *Pa. Rep.* 419 ; 4 *Vesey* 596 ; 5 *Johns. Ch. Rep.* 296 ; 6 *Id.* 1 ; 11 *Ves.* 252 ; *Id.* 333 ; 1 *Jones* 436, Chambers's Appeal.

The division of the fund was not the act of the widow, and she was not consulted about it. She was not estopped by not objecting to it. 10 *Barr* 531–2–3. In the case in 11 *Vesey* 326, *cestui que* trust assisted to place the fund in jeopardy, and acquiesced in it. In the case in 11 *Ves.* 333, the widow was informed of the embarrassed condition of the executor who received the money, and acquiesced.

The opinion of the court was delivered January 26, by

Lowrie, J.—By the settlement and confirmation of a joint account, showing a balance in their hands, the joint liability of the executors is admitted and adjudged. The fact that they divided this balance equally between them does not alter their liability ; for this was their own act, and they, and not the legatees, must bear the consequences of it. Only he who confides should suffer by a breach of trust. The legatees confided in the joint liability of the executors, and we cannot transfer their confidence to a single one. Each executor confided in the other, and if that confidence was

misplaced, he that misplaced it must suffer for it.   These principles are plain ; and we are not called upon to reconcile the somewhat inconsistent cases of Brown's Appeal, 1 *Dallas* 311 ; McNair's Appeal, 4 *Rawle* 154 ; and Sterret's Appeal, 2 *Penn. Rep.* 419. The case of Bunting's Appeal, 4 *W. & Ser.* 469, is more in point.

But it is said that the legatees, by receiving the half of the interest from each of the executors, and by the other facts reported, have consented to the severance of the joint liability.   This, however, is not a legitimate inference from those facts.   For their own benefit or convenience the executors divided the money ; but the legatees had still a right to demand the interest from either, and it was generosity in them to receive it in divided payments, half from each.   This act of generosity does not change the rights of the parties, and, especially to the legatees, it should work no injury.   It was not this, but the misplaced confidence of one executor in the other, that led to the loss.   He that places confidence, should watch that it is not abused.   If he neglects to do so, the maxim applies, Whose is the negligence, his is the loss.   These principles cover all the facts reported on behalf of the appellant. Some of them tended to his benefit, and none to his injury.

Decree affirmed.